Milligan, J.,
delivered the opinion of the court:
The original claimant, Noble A. Hardee, is dead, and this action stands revived in the name of bis executrix, Ann M. Hardee. The claim made in the petition is for four hundred and eleven bales of sea-island and eighty-ñve bales upland cotton, which it is alleged were seized by the United States in Savannah, Ga., in 1865.
The facts on which the claim is founded are as follows:
1. The claimant was a resident of Savannah, and citizen of the State of Georgia; his occupation, cotton-factor, and as such, at the timé the city was captured by the Union forces under General Sherman, he held as factor a considerable quantity of cotton belonging to other persons, besides the amount claimed in this' suit, which was kept separate from *317 the cotton, on consignment, and distinguished as his individual-property on his books.
2. The claimant proves title to four hundred and eleven bales sea-island and forty-nine bales upland cotton, which at the time of seizure were stored as-follows : Forty-eight bales upland in Williams’ store, one bale upland in Stoddard’s store, two hundred and ninety-four bales sea-island in Williams’ store, one hundred and seventeen bales sea-island in Stoddard’s store.
3 The nest day after the occupation of the city of Savannah the claimant’s office was entered by a mob, which destroyed and carried off many of his books and papers, including the letter-books containing the correspondence relating to said cotton and his business generally, and there is, therefore, no specific history of the purchase of the cotton claimed other than that given by his book-keeper and general agent, who swears he knows the cotton belonged to Noble A. Hardee, and that the money came from his hands that paid for it.
4. The city of Savannah was captured in December, 1864, and a few weeks thereafter all the cotton held by the claimant, as well that in his own right as that on consignment, was seized by the United States military forces, shipped to New York, and there sold, and the proceeds paid into the Treasury.
5. There is some confusion and uncertainty in the transcripts of the registration and shipment of the cotton taken from the claimantbut an inspection of the original book in the Treasury Department, showing the shipment, leaves no doubt that the four hundred and eleven bales sea-island and forty-eight bales upland cotton were sent forward to New York, as aforesaid.
6. The claimant’s testator, who was alive at the seizure of the cotton claimed in the petition, appears to have opposed secession at the beginning, but the weight of evidence is that afterward he gave way and was carried with the current of the rebellion.-
7. After President Lincoln issued his amnesty proclamation of December 8, 18C3, he took and subscribed the following oath:
“ United States oe America : ■
“ I, Noble A. Hardee, of the county of Chatham, State of *318 Georgia, do solemnly affirm, in the presence of Almighty God, that I will henceforth faithfully support and defend the Constitution of the United States and the Union of the States thereunder $ and that I will, in like manner, abide by and faithfully support all laws and proclamations which have been made during the existing rebellion with reference to the emancipation of slaves : So help me God.
“N. A. HARDEE.
“ Subscribed and sworn to before me, at Savannah, Ga., this 30th day of June, A. D. 1865.
“CHARLES H. COX,

“ Gaj>t. 15 th N. T. V. V. and Provost-Marshal, Savannah, Ga.

“ The above-named has dark complexion, gray hair, and blue eyes; is 6 feet; aged sixty years; by profession a merchant.”
8. It is fully proven that the claimant was not at the time he took the foregoing oath within any of the exceptions of the President’s proclamation, and that he has faithfully kept and observed his said oath.
9; He afterward, on the 31st of July, 1807, accepted iu writing a special and conditional pardon tendered him by President Johnson, but the record fails to show that he ever complied with its conditions or took the oath required in the pardon. He died on the 10th of September following, and his wife, Ann M. Hardee, qualified as his executrix.
This case, although substantially the same as several other cases falling under the decisions of the Supreme Court giving effect to pardon and amnesty granted by the President, nevertheless is distinguishable from a number of them. The special pardon tendered to the claimant’s testator, and by him accepted on the 31st July, 1867, was conditional, which conditions he never complied with, and therefore his status, so far as the special pardon is concerned, remained unchanged. Why he did not comply with the conditions of the pardon need not be inquired into. His failing health seems, however, to offer a sufficient apology, for he died a little over one month from the time he accepted the pardon.
It is also to be observed that the claimant died before the President’s proclamation of the 25th of December, 1868, in which unconditional amnesty and pardon were granted to all *319 wbo bad participated in the rebellion, without exception or reservation, and therefore bis status, so far as this proclamation is concerned, was not affected.
This proclamation, however, affected bis executrix, in whom the right of action in this case then resided, and removed all disabilities growing out of the rebellion, if any existed, on her part, to the prosecution of this suit.
But independent of both the special pardon and the proclamation of the 25th of December, 1868, the claimant is shown to have taken the amnesty oath, in his life-time, prescribed by President Lincoln in his proclamation of the 8th of December, 1863. He was not within any of the exceptions of that proclamation when he took and subscribed the oath, and he is shown faithfully to have observed and kept it inviolate up to the day of his death.
Under the decisions of the Supreme Court this is enough to entitle his personal representative to maintain this action.— Padelford's Case, (7 C. Cls. R., p. 144;) Klein's Case, (7 C. Cls. R., p. 240;) Armstrong's Case, (7 C. Cls. R., p. 280;) Pargoud's Case, (7 C. Cls. R., p. 289.)
We hold, therefore, the claimant entitled to recover the net proceeds of four hundred and eleven bales of sea-island cotton at $231.79 per bale, amounting to $95,265.69, and forty-nine bales upland cotton at $175.33 per bale, amounting to $8,591.17, making together the sum of $103,856.86; for which judgment will be entered and certified.